*158
MEMORANDUM OF DECISION

EAGAN, J.
INTRODUCTION
The plaintiff, Joseph W. Burns, alleges in his Revised Complaint that the Mohegan Tribal Gaming Authority (MTGA) discriminated against him in the promotion process and then terminated his employment in retaliation for the exercise of protected rights contrary to the requirements of the Mohegan Discriminatory Practices *159 Ordinance (DEPO) and the Mohegan Tribal Employment Rights Ordinance (TERO); that he was harassed through an improper investigation report that resulted in his termination in violation of the DEPO and the TERO; and that he was subjected to a hostile work environment, also in violation of the DEPO and the TERO. The plaintiff proceeded to trial on his revised complaint, •pro se.
The plaintiff has failed to establish, by a preponderance of the evidence, any of his claims for relief. Additionally, under the DEPO, the MTGA had legitimate, nondiscriminatory grounds for terminating the plaintiff. The plaintiffs claim of discriminatory failure to promote is time barred.
With regard to plaintiffs claim for relief under the TERO, there is no private right of action under the TERO.
FINDING OF FACTS
1. Plaintiff has been recognized by the Mohegan Tribe as a Native American.
2. In January, 2008 plaintiff was a full-time limousine driver. Previously, he had been a part-time trainer of drivers, but eventually gave up this position due to time problems and limitation in pay.
3. In the absence of direction from the Transportation Management of the Mohegan Tribal Gaming Authority (MTGA), plaintiff initiated his own driver’s training test on the use of alcohol by a limousine driver while on duty.
4. The test consisted of stopping at a local restaurant when on a training run with new drivers, but with no casino patrons in the vehicle, and ordering a beer. Plaintiff would then invite the trainees to order a beer, which was in violation of the strict tribal regulations of no drinking while on duty. According to the plaintiff, the purpose of the test was to see whether the trainees, if offered alcoholic beverages by limousine patrons or in other circumstances, would acquiesce.
5. The plaintiff consumed the beer he ordered when testing the driver trainees.
6. In February 2008, after the plaintiff and another limousine driver/trainer engaged in a verbal altercation in the drivers’ lounge, the other limousine driver complained to management about the plaintiffs conduct.
7. This complaint instigated an investigation which disclosed that the plaintiff had made unauthorized use of the casino limousine for his daughter’s transportation from Boston to his home and then back to Boston and for family visits; and that plaintiff had consumed alcohol while on duty.
8. Plaintiff acknowledged that on occasion he did drink alcohol while on duty. As a result of this investigation, primarily for his consumption of alcohol while on duty, the plaintiff was terminated.
9. Previously, the plaintiff had complained to management about the promotion of Mandy Phillips to the position of Operations Manager over himself and others. At this time, he did claim his Native American preference.
10. The MTGA management rescinded Mandy Phillips’ promotion and left the position unfilled.
11. Plaintiff was not promoted to the position he sought due to his lack of supervisory qualifications as required for the job.
12. More than 90 days had elapsed before the plaintiff complained about the lack of promotion.
13. There is no dispute that the plaintiff appeared to be an excellent limousine driver and trainer, until his use of Mohegan Sun limousines for personal matters *160 and his drinking on the job were discovered.
DISCUSSION
A. Plaintiffs Claims Under the TERO
Plaintiff has asserted his claims, in part, under the TERO, codified at Article V of the Mohegan Code. Section 4-105 of the TERO provides:
(a) Preference in Hiring. This Article requires Native American preference in all aspects of employment, including but not limited to recruitment, hiring, promotion, lateral transfers, retention, and training. A Covered Employer shall not recruit, hire, or otherwise employ any non-Native American for any position covered by this Article, if a Native American who meets the Minimum Qualifications has applied for sueh position, unless an exception exists within this Article. The Covered Employer shall select the Native American who meets the Minimum Qualifications for such position and who qualifies for employment in accordance with the hiring policies of the Covered Employer by using the following order of priority:
(1) A Mohegan.
(2) A Native American.
It is plaintiffs position that, as a Native American, he was denied the preference required by the TERO and discriminated against when Ms. Phillips was promoted to the position of Operations Manager over himself and others, in violation of the TERO.
First, as the Findings of Fact show, however, the plaintiff did not meet the minimum supervisory qualifications required for the position. Second, Section 4-104 of the TERO sets out an enforcement scheme for the TERO provisions and provides that the TERO administration shall “(5) Investigate complaints of potential violations of this Article and make determinations regarding the same”. § 4-104—(5). While plaintiff testified that he approached the TERO Commission Director with concerns about his treatment as a Native American, he admitted that he never filed the requisite complaint with the TERO Commission.
Third, and most importantly, to allow plaintiff to proceed with his claims under the TERO would be in direct contradiction of Section 4-116, “Sovereign immunity”, which provides:
(a) Nothing in this Article is intended or shall be construed or applied to create a private right of action in any person.
(b) Nothing in this Article waives the sovereign immunity of the Mohegan Tribe or the Mohegan Tribal Gaming Authority except to the limited extent and for the limited purposes expressly set forth in Section 4-110 of this Article.
(c) The sovereign immunity of The Mohegan Tribe shall attach to the actions or inactions of The Mohegan Tribe, the Mohegan Tribal Gaming Authority, and all of each of their entities and instru-mentalities. It shall also attach to the actions or inactions of any individual acting on behalf of The Mohegan Tribe, the Mohegan Tribal Gaming Authority, or any of each of their entities or instru-mentalities.
(Res. No. 2007-10, 2-7-2007) (emphasis added).
Thus, by its express language, the TERO does not permit a private right of action such as the plaintiff seeks to maintain in this suit.
B. Discrimination Claim
To pursue a claim against the MTGA, the plaintiff must show that the Tribe waived its sovereign immunity with regard *161 to the claim. Claims of employment discrimination are governed by the DEPO, which waives tribal immunity to the following, limited extent: Sec. 4-28 Sovereign Immunity.
(a) Limited Waiver of Sovereign Immunity. The Mohegan Tribe expressly waives its sovereign immunity from suit, but solely to permit an Applicant or Employee to bring an action in a Mohegan Court, for violations of this Article seeking only the remedies contained in Section 4-27 of this Article, provided that any such suit shall be brought no later than ninety (90) days after the occurrence of the event out of which the complaint arises, or within ninety (90) days after the Applicant or Employee first knew or, through the exercise of reasonable diligence should have known, of the occurrence or event out of which such complaint arises. This limited waiver shall not be construed as a waiver of the sovereign immunity of the Mohegan Tribe or a consent to suit in state or federal court, or in any other forum. This limited waiver shall not be construed nor shall such grant be deemed consent by the Mohegan Tribe to the levy of any judgment, lien, or attachment upon the trust or other property of the Mohegan Tribe.
(b) Nothing in this Article waives the sovereign immunity of the Mohegan Tribe or the Mohegan Tribal Gaming Authority except to the limited extent and for the limited purposes expressly set forth in Section 4-27 of this Article.
(c) The sovereign immunity of the Mohegan Tribe shall attach to the actions of the Mohegan Tribe; the Mohegan Tribal Gaming Authority; the Director of Human Resources; any Department Head; and any individual acting on behalf of the Mohegan Tribe, the Mohegan Tribal Gaming Authority or any of their affiliated governmental entities and such immunity shall be binding upon all employees and applicants for employment to whom this Article applies.
(Res. No. 2008-58, 7-2-08; Res. No. TGA 2008-09, 7-2-08).
The practices which are unlawful under the DEPO are set forth in Section 4-24: Sec. 4-24. Practices Declared Unlawful.
(a) It shall be an unlawful employment practice for an employer to discriminate, with respect to hiring, discharging, compensation, benefits, demotion, disciplining, suspending, barring, or layoff, on account of an Applicant’s or Employee’s:
(1) Race, gender, color, national origin, pregnancy or related medical condition, age, ancestry, marital status, sexual orientation, military status or genetic information;
(2) Religion provided that the religious practice may be reasonably accommodated; when a reasonable accommodation is possible;
(3) Mental or physical disability when reasonable accommodation is available;
(4) Exercise of rights under this Article, the Mohegan Tribal Workers’ Compensation Ordinance, the Mohegan Fair Labor Standards Ordinance, the Mohegan Family Medical Leave Ordinance, and the Mohegan Employment Retirement Income Security Ordinance;
(5) Good faith participation in reporting an Employer’s violation of a Mohegan Tribal law or regulation to a Mohegan Tribal governmental or regulatory agency; or
*162 (6) Participation, when requested by a Mohegan Tribal governmental or regulatory agency, in an investigation or hearing held by such agency.
Plaintiffs trial brief and closing argument at trial indicate that his discrimination claim is based on the fact he was not awarded the Operations Manager position. Instead, this position was awarded, for a brief time, to Mandy Phillips. There is, however, insufficient evidence to support a finding of discrimination under the applicable preponderance of the evidence test and ample evidence to the contrary.
First, in June 2007, when Mandy Phillips was appointed to the position that plaintiff sought, plaintiff did not have the two years experience in a supervisory position which was a job requirement.
Second, there was no evidence introduced at trial as to Mandy Phillips’ qualifications for the position, or, indeed, whether she herself may have been a Native American.
Third, the evidence establishes that Mandy Phillips was removed from the position when plaintiff requested that he be considered and the position was never filled.
Lastly, any claim in this lawsuit that the plaintiff was discriminated against by the failure to promote is time barred. The DEPO § 4—27(b), expressly provides a 90-day period within which to file a complaint: “[A]ny such suit shall be brought no later than ninety (90) days after the occurrence of the event out of which the complaint arises, or within ninety (90) days after the Applicant or Employee first knew, or, through the exercise of reasonable diligence should have known, of the occurrence or event our of which such complaint arises.”
Plaintiffs suit was not filed until a year after the June 2007 promotion of Mandy Phillips, which plaintiff claims was discriminatory. Accordingly, this grounds, by itself, requires plaintiffs claim to be denied.
C. Retaliation Claim
The plaintiffs claim of retaliation in violation of the DEPO appears to have two prongs. One part of his claim is that his termination was in retaliation for exercising his right, as a Native American, to challenge the Mandy Phillips appointment. But the record is devoid of any credible evidence to support that plaintiffs termination was related to his complaining about the Phillips promotion.
Rather, the evidence is clear that plaintiff consumed alcohol while on duty, contrary to MTGA’s policy # 27, and that employees who violate this policy are terminated, as the plaintiff was. Additionally, as a result of the investigation following the drivers’ lounge incident, it was discovered that the plaintiff was using the casino limousine for personal reasons, including transporting his daughter home from Boston and for visiting family members, contrary to MTGA policy.
The second prong of plaintiffs retaliation claim is that the co-worker who complained to MTGA management about plaintiff: “used false and manipulated facts to retaliate against plaintiff.” Plaintiffs Trial Brief, June 17, 2009, p. 1. The limousine driver/trainer who complained about the February 23, 2008 lounge incident to management and who also reported the “Beer Test”, was not a member of the MTGA management or involved in its decision making process. Accordingly, he could not retaliate against the plaintiff in violation of the DEPO in that he lacked the power to discipline the plaintiff.
D. Harassment Claim
Plaintiffs claim of harassment involves largely the investigation and report which *163 resulted in his termination. Plaintiff contends the investigation/report were manipulated and incomplete. Revision to Claims, September 23, 2008. Plaintiff argues that the investigation/report had no reason to address the “Beer Test” as being too old and that the MTGA had only three days to address a “Beer Test” complaint, which previously had been made in 2006.
There is simply nothing to support plaintiffs contention that the MTGA management was required to act within three days of any complaint. Moreover, there is no evidence that any member of the MTGA management team was aware of the “Beer Test” before the 2008 investigation.
As to the incident in the drivers’ lounge which was set forth in the investigative report that plaintiff challenges, it was, indeed, considered in the decision to terminate plaintiff. However, the record is clear beyond any doubt that it was the plaintiffs drinking alcohol while on the job, which plaintiff admitted, that mandated his termination.
E. Hostile Working Environment Claim
As the defendant correctly notes, for the plaintiff to establish his claim of a hostile work environment, he must prove such a “severe and pervasive” hostility so as to make the work place intolerable both on a subjective, as well as on an objective basis. Defendants’ Post Trial Brief, September 9, 2009, p. 30.
Plaintiffs Revision of Claims alleges a hostile working environment in that defendant allowed “co-workers to get away with discriminatory remarks about the tribe and other Indians. When plaintiff defended our heritage, or fended off harassing comments, plaintiff would be disciplined for rude and discourteous behavior to a coworker”. Revision of Claims, supra, p. 2.
In support of this allegation, plaintiff described a single episode where he maintains a coworker denigrated the Native American preference. This sole incident in June 2007 is insufficient to establish the “severe and pervasive hostility” that is the gravamen of a hostile work environment.
Moreover, to the extent plaintiff relies on the written warning he received stemming from this incident as showing discriminatory animus, the warning was issued because of the crude language plaintiff used in responding to his coworker.
F. Existence of a Non-Diseriminatory Grounds for Plaintiffs Termination
The theme of unlawful discrimination permeates each of plaintiffs claims for relief. In this regard, Section 4-25 of the DEPO is relevant and determinative:
(а) It shall not be unlawful or considered employment discrimination, if the employment practice:
(2) Was a result of a legitimate, nondiscriminatory business decision; or
(5) Would have occurred notwithstanding any discriminatory employment practice.
The MTGA has an absolute prohibition against employees consuming alcoholic drinks while on the job. The plaintiff himself admitted that, on occasion, he did so while working.
The conclusion is inescapable that the termination of plaintiffs employment for drinking alcohol while on the job was a legitimate, non-discriminatory business decision, notwithstanding any alleged discriminatory employment practice.
*164 CONCLUSION
The defendant’s termination of plaintiff was proper and not in violation of any ordinance or law.
So ordered.